UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

№ 06 Civ. 2771 (RJS) (JCF)

WILLIAM BROWN, JR.,

Petitioner,

VERSUS

BRIAN FISHER, SUPERINTENDENT,
SING SING CORRECTIONAL FACILITY,

Respondent.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/27/10

ORDER ADOPTING REPORT AND RECOMMENDATION
August 27, 2010

RICHARD J. SULLIVAN, District Judge:

William Brown, Jr. ("Petitioner") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). Before the Court are Petitioner's objections to the April 29, 2010 Report and Recommendation (the "Report") of the Honorable James C. Francis, Magistrate Judge, recommending the denial of the Petition. For the reasons set forth below, the Court concludes that Petitioner's objections are without merit and adopts Magistrate Judge Francis's thorough and well-reasoned report in full. Accordingly, the Petition is DENIED.

I. BACKGROUND

A. Facts

The following facts were established at trial. On October 5, 2001, Petitioner arrived at the Trotters Tavern in White Plains, New York, accompanied by Anthony Giovanniello and Alex Muscarella. While at Trotters, an argument erupted between Petitioner and David Bernadini. This argument escalated into a physical fight when Bernadini struck Petitioner.

Vincent Sassone testified that he watched the fight from ten feet away and witnessed the following events: first, he saw Bernadini knock Petitioner to the ground, after which Petitioner yelled, "Open up the fucking car!" Petitioner then ran to a black Jaguar in the parking lot, opened the passenger-side door, retrieved a knife, and returned to the entrance of Trotters. As he approached the entrance, Petitioner was intercepted by Agripino Lage. During an ensuing fist fight, Petitioner stabbed Lage with the knife four times. Afterwards, Petitioner ran back and forth, acting "a little frantic," and fled at the sound of police sirens. Lage was injured but survived. An hour later, police arrested Petitioner in a nearby hotel lobby.

B. Trial Proceedings

On May 20, 2002, Petitioner was charged with second-degree attempted murder, first-degree assault, and third-degree criminal possession of a weapon. After a pre-trial *Wade* hearing to establish the reliability of Lage and Sassone's photo-array identifications of Petitioner, the court admitted the identifications into evidence. *See United States v. Wade*, 388 U.S. 218 (1967).

A jury trial commenced on January 27, 2003, at which both Sassone and Lage identified Petitioner as Lage's attacker. On the third day of deliberations, it was revealed to the court that one of the jurors had been a victim of a stabbing thirty years earlier. After speaking with the other jurors, the parties, and the juror in question, the trial judge concluded that there was no basis for a finding of juror misconduct. However, after receiving a note from the jury stating that this revelation was impacting their deliberations, the judge, with the consent of both parties, issued an *Allen* charge. *See Allen v. United States*, 164 U.S. 492 (1896).

On February 8, 2003, after receiving the *Allen* charge, the jury found Petitioner guilty of first-degree assault and third-degree criminal possession of a weapon. The jury acquitted Petitioner of second-degree attempted murder. On June 2, 2003, Petitioner retained new counsel and moved to set aside the verdict pursuant to Section 330.30(1) of the New York Criminal Procedure Law. He alleged juror misconduct, the court's failure to suppress the in-court identifications of Petitioner, the prosecutor's refusal to disclose *Brady* material, the court's denial of challenges to two prospective jurors for cause, and ineffective assistance of trial counsel. The court denied this motion by order dated July 7, 2003. The next day, Petitioner was sentenced to twenty years of imprisonment to be followed by five years of post-release supervision for the assault charge, running concurrently with two and one-third to seven years of imprisonment for the weapons charge. He is currently serving this sentence.

C. Post-Sentencing Proceedings

The Appellate Division denied Petitioner's direct appeal on May 3, 2004. *People v. Brown*, 775 N.Y.S.2d 877 (N.Y. App. Div. 2004), *leave denied*, 784 N.Y.S.2d 9 (N.Y. 2004). On July 26, 2005, Petitioner moved to vacate his conviction pursuant to Section 440.10 of the New York Criminal Procedure Law. He argued that (1) the prosecution had failed to turn over evidence showing that the Jaguar's owner had lent his car to someone other than Petitioner that night, the police investigation contained errors, and Sassone's identification of Petitioner was unreliable; (2) trial counsel was ineffective for not hiring private investigators, not calling as a witness the person whom Petitioner claims drove him to Trotters that evening, and not presenting photo evidence showing Petitioner's resemblance to Muscarella; (3) both trial and

2

appellate counsel were ineffective for not challenging the eyewitness identifications, calling Petitioner to testify, or raising Petitioner's constitutional objection to the investigating officer's testimony; and (4) errors occurred relating to jury selection, bias, and misconduct. The Appellate Division denied this motion by order dated September 26, 2005.

On October 11, 2005, Petitioner filed a writ of error *coram nobis*, raising the same claims as were presented in his § 440.10 motion. The Appellate Division denied his motion by written order on December 27, 2005. *People v. Brown*, 805 N.Y.S.2d 850 (N.Y. App. Div. 2005), *leave denied*, 817 N.Y.S.2d 628 (N.Y. 2006).

Petitioner filed this federal habeas corpus petition on April 10, 2006, and the case was assigned the Honorable Kimba M. Wood, District Judge. On December 13, 2006, the case was reassigned the Honorable Stephen C. Robinson, District Judge, who referred the case for a Report and Recommendation to the Honorable Mark D. Fox, Magistrate Judge. Following the retirement of Magistrate Judge Fox, the referral was transferred to the Honorable Paul E. Davison, Magistrate Judge, on January 12, 2009. On May 15, 2009, Magistrate Judge Davison granted Petitioner's motion to amend the Petition.

The case was reassigned to my docket on June 5, 2009. The Court referred the amended Petition to Magistrate Judge Francis on September 29, 2009. On April 29, 2010, Magistrate Judge Francis issued his Report, recommending that the Petition be denied. Petitioner timely submitted objections on May 11, 2010.

II. DISCUSSION

A. Legal Standard

A court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge. Fed. R. Civ. P. 72(b); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989). A court may accept those portions of a report to which no specific, written objection is made, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997) (citing Fed. R. Civ. P. 72(b) and *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). To the extent that a party makes specific objections to a magistrate judge's findings, the court must undertake a de novo review of the petitioner's objections. *See* 28 U.S.C. § 636(b)(1); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).

However, where the objections are "conclusory or general," or where the petitioner "simply reiterates his original arguments," the report should be reviewed only for clear error. *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002) (quoting *Barratt v. Joie*, No. 96 Civ. 0324 (LTS) (THK), 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002) (citations omitted)); *accord Cartagena v. Connelly*, No. 06 Civ. 2047 (LTS) (GWG), 2008 WL 2169659, at *1 (S.D.N.Y. May 23, 2008).

B. Analysis

All but two of Petitioner's objections are

3

mere reiterations of rejected arguments.[1] Finding no clear error in Magistrate Judge Francis's analysis of these arguments, the Court adopts these portions of the Report and reviews the remaining two objections de novo.

### 1. *Brady* Claim

Petitioner objects to Magistrate Judge Francis's application of a "reasonable probability" rather than a "reasonable possibility" standard of materiality to the newly discovered evidence that John Valente, the owner of the Jaguar, had loaned the car to Muscarella on the day of the stabbing. (Obj. at 3.) Petitioner argues that because trial counsel requested *Brady* material before trial and did not receive it, Magistrate Judge Francis should have considered whether, based on this new evidence, there was a "reasonable possibility" that earlier disclosure would have resulted in a different outcome in the proceeding. (*Id.*) This objection is without merit because (1) no basis exists for Petitioner's proposed "reasonable possibility" standard, and (2) under the "reasonable probability" standard, the evidence is not material.

A *Brady* violation occurs when (1) evidence exists that is favorable to the accused, (2) the evidence was willfully or inadvertently suppressed by the prosecution, and (3) prejudice to the accused ensued as a result.

---

[1] These objections relate to arguments that (1) trial counsel was ineffective for failing to call Richard Fruciante as a witness and not hiring private investigators, and (2) appellate counsel was ineffective for failing to challenge the denial of Petitioner's right to testify, not challenging the admission of testimony that allegedly violated the Confrontation Clause, and not challenging the empaneling of the juror who admitted he had been a stabbing victim in the past. (Obj. at 7-16.)

*E.g. Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The duty to disclose *Brady* evidence extends only to evidence that is material to guilt or punishment. *United States v. Coppa*, 267 F.3d 132, 138 (2d Cir. 2001). Materiality turns on whether there is a *reasonable probability* that disclosure of the evidence would have resulted in a different outcome in the proceeding. *E.g. United States v. Bagley*, 473 U.S. 667, 682 (1985).

Petitioner provides no legal authority for his assertion that a "reasonable possibility" standard for materiality exists for requests made before trial. (*See* Obj. at 3-6.) In fact, the *Brady* duty does not require the prosecution to turn over exculpatory evidence during the pre-trial phase. *See Coppa*, 267 F.3d at 146 (rejecting an interpretation of *Brady* that required the government to immediately disclose all material evidence before trial on the defendant's request); *United States v. Nogbou*, No. 07 Civ. 814 (JFK), 2007 WL 4165683, at *3 (S.D.N.Y. Nov. 19, 2007) (noting that the defendant's application for pre-trial disclosure of evidence, while not required under *Brady*, might raise the question of whether the court should order disclosure as a matter of sound case management).

In any event, the Court finds that evidence pertaining to whom Valente claimed he lent his car to that night is not material under the reasonable probability standard. This test asks whether in the absence of the suppressed evidence, the defendant received a fair trial resulting in a "verdict worthy of confidence." *Leka v. Portuondo*, 257 F.3d 89, 104 (2d Cir. 2001); *see also United States v. Payne*, 63 F.3d 1200 (1208) (2d Cir. 1995) (defining a "reasonable probability" as a probability sufficient to undermine confidence in the

4

outcome of the case). Because "materiality is assessed in light of the evidence adduced against the defendant at trial," habeas relief is not warranted on the basis of a *Brady* claim when the conviction is otherwise "supported by overwhelming evidence of guilt." *Leka*, 257 F.3d at 104 (asserting that the court was "wholly unconvinced" of the reliability of the two eyewitness identifications, the sole evidence linking the defendant to the crime).

While evidence that Valente lent his car to someone other than Petitioner that night could have corroborated the defense theory that Petitioner did not know there was a knife in the car, it is outweighed by the strength of the other evidence presented at trial that Petitioner stabbed Lage. Both Sassone and Lage identified Petitioner as the attacker during a pre-trial photo array as well as at trial. (Report at 4, 14-15.) Although "a conviction based on eyewitness identification will be set aside if the pre-trial identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," here, the reliability of the identifications was established at a pre-trial *Wade* hearing. *See United States v. Perez*, 138 F. App'x 379, 382 (2d Cir. 2005); *Olba v. Unger*, 637 F. Supp. 2d 201, 209 (S.D.N.Y. 2009).

Additionally, Sassone testified that he had never seen Petitioner before that night, watched the fight from ten feet away, does not wear eyeglasses for distance, the area had streetlights, and he identified Petitioner by his clothing as the same person who retrieved something from the Jaguar and fought with Bernadini earlier. (Tr. at 147, 160-61.) Lage also testified that he had an unobstructed view of Petitioner as he was walking toward him, fought with him face-to-face, and did not fight with anyone else that night. (Tr. at 186-88, 190, 192.) Moreover, Lage's testimony is particularly compelling given that "the victim . . . is apt to be a more reliable source of identification than is a mere spectator to the incident." *Willin v. Ajello*, 496 F. Supp. 804, 808 (D. Conn. 1980) (quoting *United States v. Mims*, 481 F.2d 636, 637 (2d Cir. 1973)).

Accordingly, because Petitioner has failed to show that (1) Magistrate Judge Francis erred in applying a "reasonable probability" standard of materiality to the newly discovered evidence, or (2) failure to turn over the *Brady* evidence created a reasonable probability that earlier disclosure would have undermined confidence in the outcome of the proceeding, the Court rejects Petitioner's *Brady* objection.

2. Ineffective Assistance of Trial Counsel Claim

The Court also reviews de novo Petitioner's objection to Magistrate Judge Francis's finding that his ineffective assistance claim, stemming from counsel's failure to use photographs to show his resemblance to Muscarella or to elicit expert testimony to undermine the eyewitness identifications, is procedurally barred because he did not raise it on direct appeal. (Obj. at 8.) Petitioner argues that his ineffective assistance claim was "raised sufficiently" in his *coram nobis* petition (*id.*) and that even if his claim is procedurally barred, Magistrate Judge Francis erred in not waiving the default because the failure to raise it on appeal was caused by attorney error. (*Id.*)

A claim raised in a *coram nobis* application is procedurally barred from habeas

5

review if it was rejected on an adequate and independent state procedural ground. *See Aparicio v. Artuz*, 269 F.3d 78, 92 (2d Cir. 2001) (*citing Coleman v. Thompson*, 501 U.S. 722, 730 (1991)). Here, Petitioner's claim was rejected on an adequate and independent state procedural ground under Section 440.10(2)(c) of the New York Criminal Procedure Law because on direct appeal he did not specifically raise trial counsel's failure to use photographs to illustrate his physical resemblance to Muscarella or elicit expert testimony to undermine the eyewitness identifications.

Furthermore, the Court finds no merit to Petitioner's objection that his procedural default should be waived because of attorney error. (*See* Obj. at 8.) To excuse procedural default, a petitioner must (1) show *cause*, or "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court," as well as (2) actual *prejudice* that resulted from the alleged errors. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). When a petitioner alleges that attorney error constitutes the basis for "cause," he must prove that such error meets the *Strickland* test[2] for ineffective assistance of counsel. *E.g. Faison v. McKinney*, No. 07 Civ. 8561 (JGK), 2009 WL 4729931, at *11 (S.D.N.Y. Dec. 10, 2009) (quoting *Murray v. Carrier*, 477 U.S. 478, 492 (1986)). Under this test, a petitioner must establish that his counsel "made errors so serious that counsel was not functioning as [required] by the Sixth Amendment." *Faison*, 2009 WL 4729931, at *14 (quoting *LanFranco v. Murray*, 313 F.3d 112, 118 (2d Cir. 2002)).

Although presenting the jury with photographs to show the alleged resemblance between Muscarella and Petitioner could have supported Petitioner's argument that he was mistakenly identified, counsel's failure to do so does not overcome the "strong presumption" that, "under the circumstances, the challenged action might be considered sound trial strategy." *Quinones v. Miller*, 224 F.App'x. 44, 48 (2d Cir. 2007) (quoting *Strickland*, 466 U.S. at 689)). Determining which witnesses to call or which evidence to use represents a "tactical decision that ordinarily does not constitute a basis for a claim of ineffective assistance of counsel." *See United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *Speringo v. McLaughlin*, 202 F. Supp. 2d 178, 193 (S.D.N.Y. 2002).

The record shows that defense counsel first tried to suppress the eyewitness identifications in a *Wade* hearing and then sought to undermine Sassone's and Lage's testimony on cross-examination by bringing up various factors that might have impeded their ability to accurately identify Petitioner. (Tr. at 171-72, 232-36, 243-44, 248-50.) In so doing, counsel could have reasonably decided not to introduce photographs of Muscarella on the basis that doing so could harm the defense if the jury found that the resemblance was not sufficiently similar. Likewise, declining to call an expert witness to testify as to the *general* reliability of eyewitness identifications does not fall outside the realm of effective counsel, especially where the specific eyewitnesses were available for cross-examination. Where counsel has "good reason to think further

---

[2] Under *Strickland*, a defendant must demonstrate that: (1) counsel's performance "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 669 (1984).

6

investigation would be a waste . . . continued investigation on that matter is unnecessary. *See Gersten v. Senkowski*, 426 F.3d 588, 610 (2d Cir. 2005). Thus, counsel's actions did not fall below an objective standard of reasonableness or prejudice the outcome of the proceeding. *See Strickland*, 466 U.S. at 669.

Because Petitioner has failed to establish that counsel was ineffective under *Strickland*, he has not identified any cause which prevented him from raising this claim on direct appeal. *See e.g. Faison*, 2009 WL 4729931, at *11. Thus, the Court need not reach the prejudice requirement of the procedural default waiver. Accordingly, the Court finds that Petitioner's objection to Magistrate Judge Francis's finding of procedural default is meritless, and waiver does not apply.

### III. CONCLUSION

For the foregoing reasons, the Report is adopted in its entirety, and the Petition is DENIED. A certificate of appealability will not issue because Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253. Furthermore, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. The Clerk of the Court is respectfully directed to close this case.

\* \* \*

Petitioner is represented by Marc Fernich, Law Office of Marc Fernich, 152 West 57th Sreet, 24th Floor, New York, New York 10019, and Linda S. Sheffield, 6600 Peachtree Dunwoody Road, 400 Embassy Row, Suite 470, Atlanta, Georgia 30328. Respondent is represented by John James Sergi and Joseph M. Latino, Westchester County District Attorney, 111 Dr. Martin Luther King, Jr. Boulevard, White Plains, New York 10601.

_____
RICHARD J. SULLIVAN
United States District Judge

Dated: August 27, 2010
       New York, New York

<u>Copies of this Order have been mailed to:</u>

Linda S. Sheffield
6600 Peachtree Dunwoody Road
400 Embassy Row
Suite 470
Atlanta, GA 30328

Marc Allan Fernich
570 Lexington Avenue 16th Floor
New York, NY 10022

John James Sergi
Westchester County District Attorney
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, NY 10552